Case number 17-6209, Sophie G. et al. v. Wilson County Schools Argument not to exceed 15 minutes per side. Ms. Lacer, you may proceed for the appellants. Good morning, and may it please the Court. I'm Krista Lacer from Kirkland & Ellis LLP, representing appellants Sophie G. and Kelly G. With me today is Michael Braun of Braun Law and Joshua Browning of Kirkland & Ellis. If the Court permits, I would like to reserve four minutes for rebuttal. You may. Sophie's lawsuit is one for discrimination under the Americans with Disabilities Act and the Rehabilitation Act, not denial of education under the Individuals with Disabilities Education Act, or IDEA. Can you keep your voice up a little bit for us, please? Of course. Because the relief Sophie seeks, admission to Kids Club subsidized daycare, is not relief available under the IDEA's core guarantee of a free, appropriate public education. The District Court below erred in dismissing Sophie's suit for failure to exhaust IDEA remedies. Do you have to show that it's not available under the other statute? Your Honor, the statutory text, the provision under the IDEA, provides that exhaustion is only required when the lawsuit seeks, quote, relief that is also available under the IDEA. So the question is not whether the relief is available at this motion to dismiss for exhaustion stage. The question is not whether the relief is available under the ADA and the Rehabilitation Act. The question is whether the relief sought in the complaint is relief that is also available under the IDEA. That's the question that we're addressing today. And for three reasons, IDEA exhaustion does not apply in this case. First, as I noted, the relief Sophie seeks, access to subsidized daycare, and monetary damages, is not available under the IDEA. Second, applying FRI, the gravamen of Sophie's complaint, is for discrimination in access, not denial of education. And third, even if FRI's clues could apply here, which we submit that they don't. Even if what? Even if FRI's clues, the clues presented in the FRI case, could apply here, they weigh against exhaustion in this case. This court should reverse the district court's dismissal and allow Sophie's case to proceed to the merits of her discrimination claim. On the first point, Sophie's complaint seeks relief that is not available under the IDEA. The statutory text, as I noted, says that it applies, exhaustion applies only when a provision and said, this means that the thing, quote, the thing a plaintiff must seek in order to trigger the IDEA's exhaustion rule is relief for denial of a free, appropriate public education, or FAPE. Moreover, FRI made clear that the question is not as stricter exhaustion statutes require whether the suit, quote, could have been brought under the IDEA, but is instead whether the lawsuit, in fact, seeks relief available under the IDEA. Of course, this abrogates the S.E.V. Grant case that is cited by Wilson County and the district court below, which the proposition that it was cited for was that exhaustion is based on what could be redressed to any degree by the IDEA. The FRI decision abrogates that implicitly. Exemplified by complaint paragraph five here, Sophie's complaint sought admission to Wilson County's publicly funded daycare kids club. It's a subsidized daycare, but that is paid for by parents. Second, modification in Wilson County's practices to stop discrimination against disabled children that are seeking access to kids club. And third, compensatory damages. This is relief that is not available under the IDEA. As the cases that we cited in our briefing note, access to daycare for non-educational purposes is not part of the IDEA's core guarantee of a free, appropriate public education. The cases that we cite for this proposition include, for example, AP, Ex Relatione Peterson, SPAN, Madison Metro. Several cases provide for this. And of course... As you know, counsel, Wilson County argues that it is tangentially related. I would say that's the way to think about their argument. That, you know, if you don't have daycare, well, then you're not going to be able to go to school the right way, et cetera. It's... They argue that it's tangentially related. What do you say to that? Is that enough? Precisely. That is not enough. And that's exactly the proposition that was rejected by the Supreme Court in FRI. That's called the field of education test. And it's the test that this court, in fact, applied before it was reversed by FRI. So it's precisely the wrong case. And... They always hate that. Apologies. At bottom, non-discriminatory access to childcare is not relief available under the IDEA. And of course, Wilson County beats around the bush about this, but they never actually say in their briefing that if we go back to administrative proceedings, that access to daycare would be provided under the IDEA, would be provided within our IEP. Because, of course, anything provided under the IDEA must be provided for free. And requiring this to be provided under the IDEA would mean that they would have to provide free daycare to all disabled children, to SOFI. Second, the Supreme Court's FRI decision looks at the question of what the gravamen of the complaint is. In FRI, the Supreme Court held exhaustion is not necessary when the gravamen of plaintiff's core guarantee what the act calls a free appropriate public education. Now, the statutory text defines this to include special education and related services. It, in turn, defines related services as services required to benefit from special education. And there's some examples provided. SOFI's complaint is for discrimination and access. The core question of the ADA and the Rehabilitation Act. Discrimination and access. Not denial of education. If you ask, what does Kids Club provide? This is a place where you have high school educated individuals working part time. They are engaging the kids in playtime. They have a homework hour. But the handbook for Kids Club actually notes that the staff is not allowed to require students to do their homework. They don't assist with the homework. They're not allowed to require students to do their homework. This is not a place where education is taking place. This is daycare. And, in fact, the declaration of Donna Wright says that it is provided, quote, for the convenience of parents and students. The case law makes clear that things that are provided merely for the convenience of parents and not for the purpose of allowing the student to benefit from the education are not items that are required under the IDEA. Third. I just feel that you're setting too high a bar for yourself. Because I didn't read Frye as saying that you have to show that you can't get the relief under pursuing it that way. It's just whether the claim is based on whether it's a fake claim. That's why I asked you, do you have to show that you can't get this relief? Well, you're right, Your Honor. The way that Frye has interpreted this is that you look to the gravamen of the complaint. Is this a complaint for access or is it a complaint for denial of education? And you're right. This is not necessarily the high standard that you must prove that this relief could not be available. And, in fact, Frye noted that. You don't have to prove this relief could not be available. You look at what relief is actually sought and is the gravamen of the complaint, the gravamen of the relief sought for denial of access, in which case it's an ADA rehabilitation claim, or denial of education, in which case it's an IDEA claim and it must be exhausted. Could you make your voice again? I didn't hear that last part. You dropped your voice and I didn't catch it. Apologies, Your Honor.  for denial of access, in which case it is an ADA or rehabilitation act claim, versus denial of education, in which case it would be required to exhaust remedies under the IDEA. Looking at Frye's clues, we would submit that the court should look to the gravamen of the complaint, the key aspect that is addressed in Frye. However, even if you were to apply Frye's clues, exhaustion would not be required here. Wilson County itself stated in its brief that the clues merely serve to offer, quote, guidance to assist in determining whether the gravamen of the complaint is seeking relief that is also available under the IDEA. We agree with that. What relief are you seeking here? Are you seeking injunctive relief or damages or both? Here we are seeking injunctive relief to permit SOFI access to the Wilson County Kids Club. We are seeking an injunction that would require a change of policies to prevent further discrimination against disabled students in access to Kids Club, and we're seeking compensatory damages. All three. If you look to Frye's first clue, it is whether a plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school. This is not an invitation for a merits inquiry, which would be inappropriate at the motion-to-dismiss stage. It's not a what? It is not an invitation for a merits inquiry, which would be inappropriate at the motion-to-dismiss stage. Is there a Tennessee law that requires them to do this, to take care of those who don't have control of their bowels and so forth? Yes, Your Honor. The Tennessee daycare regulations provide that if a student with disabilities is admitted to a daycare, that they would be required to provide diapering and toileting assistance as needed. And those regulations are included in Appendix A-III. Here, SOFI's claim for discrimination in admission to daycare could be brought against another public facility that offers daycare services, such as a courthouse that offers a daycare. Even if we adopt Wilson County's position that you don't look at this apples-to-apples comparison, that you would look to a theater or a library that doesn't offer daycare, the question of access is still at issue. An access restriction, a blanket access restriction, would still violate the ADA and the Rehabilitation Act in facilities without a daycare. The accommodations might be different than a daycare, but access is what we're seeking in this complaint, and a blanket denial of access is something that cannot be issued against an adult. It cannot be issued when there is another public facility at issue. A blanket denial of access is not allowed. All right. Counsel, thank you. Your time's expired. You reserved four minutes, right? Thank you. Okay. Good morning, ladies and gentlemen. Excuse me, I'm Ken Williams on behalf of Wilson County Board of Education. I always say this, I'll try to be brief. I think that Judge Crenshaw in this case got it exactly right. He did a very thorough, detailed analysis in this case. I'd first point out, while there's an injunction sought at the district court level, that issue was not appealed, so that's not before the court today. Sorry, I'm losing the end of your sentences now. It was an injunction and what? There was an injunction sought at the district court level which was denied, but they have not appealed that aspect, so that's not in front of the court. This is strictly the question of IDEA for the court today. Okay. It's a discussion issue, right? Yes, ma'am. Looking at the ground, let's go through the fry test, because Judge Crenshaw was very thorough in that analysis. They said what I call road markers. Not what? Called road markers. Thank you. So they kind of guide people that we've drifted over the years in how we try to apply this. I think the Sixth Circuit had the same problem before, and they tried to provide guidance to us. And then the three tests, basically the gravamen of the complaint, which we've talked about today, the court looked at the underlying due process complaint. The gravamen of the complaint at the due process level was clearly that they sought a one-on-one assistant for Sophie G. in the aftercare kids club program. Now, they sought that as part of FAPE. It's in their due process complaint. I'm looking at paragraph 23. In the IEP, Wilson County determines Sophie will have every opportunity to participate in extracurricular and non-academic activities that she qualifies. Despite saying so, she is denied access to the Tucker Crossroads Elementary School aftercare program because of her disability. They are seeking to continue. So it sounds like, I mean, if you read that, you could very well read that as the gravamen of that complaint is she wants to go to the kids club. She does. There's no question. You can see that she needs an individual. It's interpreted that you're going to have to have somebody diaper, right? I don't know that there's, and there may be, but I don't know of any other way you can deal with someone who has toileting needs without having an aide or an assistant of some type that's capable of doing the diaper changing. Isn't that step two? Step one is admission. The consequence of that is that the reason you aren't readily admitted is because you aren't toilet trained. And so the consequence of admission, yes, it follows therefrom that you will need an aide. It didn't seem to, as I heard you read it, did it say the word needs an individual aide? I mean, it would be a consequence, undoubtedly. If you read through it, it's a... You're reading from the due process complaint. Yes, that is correct. Okay, but we're dealing with a different complaint now. We're dealing with the complaint in the court, and it's very clear that you can ask for a thing in one venue, and they didn't get anywhere, and you can decide, well, I'm not going to ask for that anymore. I'm going to ask for something different and vindicate that other right. That is correct. But if you look at it like Venn diagrams, and you have your ADA... Nobody likes them. Nobody does, but you can visualize them. And so you've got two circles, ADA and 504, and they can touch all day long. But if the IDEA circle touches it all, then exhaustion applies. But that's not the law anymore. I mean, you can sure get that from the language, but I don't think that that's what Frye says. I think it says that we really are going to let the plaintiff be the master of the complaint. True, you can't disguise it, but you have to look at the relief that you want and the right asserted. And so if you are relying on the right to a free and appropriate public education, then you have to exhaust it. But if you're relying on rights that come not from that statute but from the anti-discrimination statutes, then you can pursue it. Well, I respectfully disagree with the concept that a plaintiff has the right to an unfettered drafting of their complaint. And I think that's why the Supreme Court in Frye... We always talk about the plaintiff is the master. They are the master of the complaint. So you're saying something different, aren't you? Well, I believe what the Frye case says is you have to look at these underlying issues to determine what the true gravamen is. So how are they asking for something that is based on a free and appropriate public education? In this case, the request that they are asking is effectively to have an assistant or aid to help with taunting needs in the kids' club program. And it's our position that, well, if you look at the regulations, it's clear that that wouldn't apply with the ADA. In our view, it's likely that that wouldn't apply with Section 95. But then they lose. That's the point, that they go to court. And we're not talking about the merits here. So either these two statutes give them a right to be in that program with whatever they think they need, or it doesn't. And if it doesn't give them that right, then they lose. They can't say, but wait, I need to do that to get my free, appropriate public education. Well, the concept of, at risk of generalizing things, the concept of an ADA in Section 504 is an access question. IDEA is more service-oriented. It can be designed and tailored for the unique needs of every child. And under that concept, her goal is to attend kids' club. We have imposed what we believe is a lawful, allowable limitation on eligibility. Not as if we put in a 15-year-old eligibility. There are certain eligibility that are allowed by law. Under the regulations, we believe that any child requiring attendance, the law doesn't protect that. It doesn't make that a criteria that can bypass the eligibility limit. But under the IEP, in the IEP process, working with the parent, we can design methods that will achieve her goals. I know, but the point is that she forfeits that. She has to forego that. If she wants to bring this lawsuit and not exhaust, if she wants to keep it pled the way it is, then she has to forego that. She doesn't get to say, look, tailor this for me. She has to face your rules and face the possibility that they're going to be deemed not discriminatory, that they're going to be valid rules. And she's going to have to live with that. Well, the kids' club does not discriminate against disabled children. There are a number of disabled children in that program. There are just no non-culture trained children in the program. And so that lack of discrimination exists. But what she is saying is we have a right to bypass those rules under Section 504 and continue with the same procedures we've got in place through the IDEA, through our IEP plan, which allows for socialization, toileting, donning and doffing, training and skills. And we contend, back to the Venn diagram, that there's that overlap, that there's that touch. We've addressed this aspect in her educational goals. This is a program. And we concede that there's federal funds or governmental funds that are effectively involved in the operation of this system, even though it's a pay-as-you-go by the parents. We're using school resources, lights, electricity. Does the state law require you to provide these doffing services? I think there's some question about that. Your Honor, it's our contention that's a very strained interpretation. I don't know. There's certainly no law that supports that interpretation, that it's mandatory that every daycare in the state of Tennessee have diapering services. I think practically... Do it with one child or do you have to do it with everybody? No question. And I think if we did open up even one of our 12, because we have 12 of these facilities in our school system, then we would have to have them in all of them and we'd have to follow the state guidelines. But the fact that we're licensed, the state of Tennessee came in and licensed us without the existence of this, I think belies the argument that the law mandatorily requires every daycare in all 95 counties to have these services. When you say it touches and that's the standard, where are you getting that from? That's my reading of the IDEA itself, ma'am. That law says if any aspect of FAPE is involved, in other words, if IDEA touches, then you've got to exhaust. And the reason is pretty practical. I understand that, but are you relying on FRI at all? Yes, I'm relying on FRI. I'm relying, and Judge Crenshaw relied on FRI. He went through step-by-step the three-part test of FRI, and the plaintiffs don't pass any of those parts in Judge Crenshaw's view and our view. And so if they can't pass any of the FRI tests, then under my interpretation of FRI, Your Honor, they're not entitled to proceed until they exhaust. So if they're saying, I'm not sure if they are,  we could bring against any daycare that received federal funds, that it has nothing to do with it being part of a school system, how do you respond to that? I have no response to that, Your Honor. I mean, if that's what they're saying, they can certainly say that, but I think the regulations would probably foreclose effectively any remedies that the IDEA. Sorry, it would what? Would probably foreclose any remedies that the IDEA. I mean, at least the regulations are. Regulations under what? Under the ADA and under the Rehabilitation Act are both clear about that there's no requirement to provide personal attendance. I think the ADA specifically references toileting. I can't recall if the Rehabilitation Act rating does or not, but both of them specifically say that there's no obligation to provide a personal assistant in any facility that receives governmental funds. So I believe, and we've said it out in our brief, and I'm certainly not an educator, but there are avenues to get this child in a situation where she can attend this aftercare program. But that's best worked with the teacher and the parent, and they can set up transitioning services, methods where maybe they can get her kind of regulated and then take her in a day at a time, once a week, or there's an extended summer learning program that they can target exclusively to this. I'm sure there are other avenues. Those are available, but those are things you discuss as part of the behavioral plan and the IEP. I guess, but didn't you guys go through that? Your Honor, they voluntarily withdrew this part of their petition to bring this lawsuit. So they pulled that out. The hearing officer never did. Well, that was after, I mean, there were some negotiations that went on. I think there were several. I was not involved at that stage. Local counsel, Mr. Jennings, who I should have introduced, and I apologize, was involved, but I believe there were several other issues that were resolved. They settled. This one wasn't settled, and rather than go through the administrative process, they withdrew it and filed a lawsuit. So any other questions you have, I'm glad to answer, but I think our position is pretty well set forth, and Judge Crenshaw's opinion is very detailed and well written. What does the school system do with children that aren't taught, trained in the regular school, not this daycare? During the academic day, they'll provide them, as our IEP may list, with a personal aid or assistant to help with those tasks. They have trained teachers. Some of the teachers are trained to do those types of things. And during the school day, that falls to them, clearly the IEP. So you comply with it there? Yes, sir. Yes, sir. Thank you. Thank you very much. Thank you, Mr. Williams. May it please the Court. I'll start first with counsel's Venn diagram comment. As this Court seemed to recognize, this is not the law after Frye. Frye rejected the field of education test. Now, when counsel's referring to, quote, things that the school could do to prepare the child for Kids Club, you can look to their brief to see what they suggest. They say they might do transition services if and when she achieved a modicum of regularity. Of course, they're not suggesting that she could currently gain admission. They're saying, well, you could put something in her IEP to teach her how to independently use the toilet, and when she can independently use the toilet, then she can be admitted. Okay, but I just want to make sure that I'm not. The rights that you are asserting, are you going to be relying simply on these two statutes without any regard to anything that she might be entitled to under? Okay, so you believe that these statutes guarantee you both admission and an aid to help with the toileting. Your Honor, if I may clarify, the relief sought in the complaint is access. That's the relief that we believe the ADA and the Rehabilitation Act would require. As Judge Cook noted, access is the first step. What accommodations are appropriate would be separate. Here, we're seeking access. The complaint seeks access. We don't talk about what kind of aid would be required. Adopting counsel's view would be like saying that a facility doesn't need to build access ramps for wheelchair users because they have a policy of excluding all individuals who can't walk from entering the building. What we're seeking here is access. We're seeking access to the building. We're seeking admission to the program. This is something that cannot be denied under the regulations. In fact, 28 CFR 35.130B8, which is cited in our briefing, prevents eligibility criteria that screens out individuals with disabilities. Okay, but you're prepared to litigate this under the ADA. Correct, and if I may also clarify, all of the IDA claims have been resolved through the settlement and final consent order. If I may read from that order, paragraph two says, quote, the parties have satisfactorily resolved that substantive part of the petitioner's complaint for due process, seeking relief for educational benefits under the IDEA. The IDEA claims have been resolved at the administrative level. What we are seeking now, access, that is a question under the ADA and the Rehabilitation Act. And also- And importantly, I think you're seeking the amount of money that your client has to pay because she doesn't get to use that subsidized- Correct, access and damages, correct. And the council noted, in response to your question about an injunction, injunction is still sought. I believe council was confused between the difference between a preliminary injunction and the relief sought, which is an injunction permitting access, which we still do seek. You're seeking injunctive relief, but it's a permanent injunction, not a preliminary injunction. Correct. The preliminary, we ultimately did not raise the issue of the preliminary injunction on appeal at this point so that we could focus on this issue, but we still continue to seek injunctive relief. Well, that would be after you went forward with the case. Correct, Your Honor. As your ultimate relief. Correct, Your Honor. And my final point I'll note, you asked whether the plaintiff is the master of the complaint. Council said that's not what Frey said, but if I may quote from Frey. In fact, Frey says, In effect, 1415L, that's the exhaustion statute, treats the plaintiff as, quote, the master of the claim. She identifies its remedial basis and is subject to exhaustion or not based on that choice. Thank you. Thank you. Appreciate the arguments. The court will consider your case carefully and issue an opinion in due course. Thank you. Thank you.